IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | |
|---|---|
| CHAD MARUSAK PRO SE, <br> Plaintiff, | IN THE DISTRICT COURT |
| v. | CIVIL No.4:21-475-P-BJ (AND THE NOW CONSOLIDATED 4:21-CV-646-P-BJ) |
| SEMA CONSTRUCTION, INC., <br> Defendant. | |

## SECOND AMENDED COMPLAINT

TO THE COURT,

      This matter is before the court on Defendants' Motion 12(e) for More Definite Statement in the Alternative which motion was filed January 11,2022, and Plaintiffs Response to an Order of to the Second Amended Complaint to be provided by the plaintiff within thirty-days. Plaintiff's Response and Opposition to the Reconsideration of its Motion to Dismiss was filed January 14,2022 by the plaintiff after Order to Amended the complaint. Plaintiff brings this action based upon personal knowledge and with exhibits (ESI) in support to further allege the defendants' own actions was willful and retaliatory, and as to all other matters based upon information and belief, based upon ESI and declaration of the plaintiff with Medical Record, State Documentation and ESI as recorded in real time from March 06,2019 and presented as exhibits in chronological order to the best of ability by the plaintiff pro se.

PRELIMINARY STATEMENT

COMES NOW, Plaintiff, or "former employee", by Pro Se., files a civil action and alleges by complaint pursuant to the following: PRELIMINARY STATEMENT 1. This is a civil action for relief for damages and other equitable relief arising from the defendants' willful violations of Title VII, as amended, ADAAA, Americans with Disabilities Act of 1990 TITLE I and V. **Public Law 101-336**. 108th Congress, 2nd session (July 26, 1990), **Title I and section 503 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq., 12203), pursuant to section 107(a) of such Act (42 U.S.C. 12117(b),** Title VII as amended, The ADEA Age Discrimination in Employment Act of 1967 (ADEA; **29 U.S.C. § 621 to 29 U.S.C. § 634)** Pub.L. 90–202, The Rehab Act of 1975, **93–112, 87 Stat. 355**, enacted September 26, 1973),Sections 503,(501-05),The ADAA of 2008, Section 2(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12101),adding: Federal Law codified as 42 U.S.C. 12102, 42 U.S.C. § 12203(a)-(b) (1994) , 29 U.S.C. 705, 29 C.F.R 1614.105-1614.115, and 793; E.O. 11758 (3 CFR, 1971-1975 Comp., p. 841), and brought by the plaintiff with record of willful violations and discriminatory conduct, including willful retaliation as a course of conduct as marked as "Continuing Action", on the basis of the former employees disability and age. By the willfulness of the defendant, the foregoing conduct, directly or indirectly, violated the plaintiffs' rights and Federal Laws. See: *Section 512 of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA) and the Rehabilitation Act Amendments of 1992 (Pub. L. 102-569) amended definitions applicable to the Rehab. Act. In addition, section 102 of the Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) (which is printed elsewhere in this publication) amended the statutes by adding a new section following section 1977 (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII, the ADA, and section 501 of the Rehab Act. The Americans with Disabilities Act Amendments Act of 2008 (Pub. L. 110-325) (ADAAA) further amended the definition of "individual with a disability. "Also See: 42 U.S. Code § 2000e–5 (a)(b).*

I. JURISDICTION AND VENUE

(1) Jurisdiction is based upon Federal Question, and in part Diversity as the "amount in controversy" exceeds $75,000.00 dollars. The claims made herein are covered by U.S. Constitutional and Statutory Law. This Civil Action is filed pursuant to 28.U.S.C 1331, and 28.U.S.C 1332(a). Therefore, The Pro Se plaintiff understands the Northern District Court of Texas to have proper subject matter jurisdiction and a filing was timely made as shown.

II. PARTIES

(1) Plaintiff filing by Pro Se is Chad Marusak and in 2019 did reside I Boyd, Texas 76023. In Late 2019, the plaintiff relocates to Olney, Texas 76374 where he currently resides in 2022 as shown for record in support.

(2) Defendant" SEMA CONSTRUCTION INC.", first employed the plaintiff when located at 14200 John Day Rd, Haslet, Texas, aside the Intermodal Railyard owned and operated by BNSF Railways and leased or provided to SEMA" defendant", while under contract for federal work sites. After complaint by the plaintiff, SEMA relocates to a location purchased at Cowboy Lane Roanoke, Texas. Thereafter the former employee submits a complaint to BNSF and SEMA H.R for discrimination and safety violations not ignored by BNSF Railway management after additional filings with OSHA and other agencies available to the plaintiff in 2019.

(a) The Defendant has locations listed in Colorado, Texas and other states in 2020, and primarily is located in Colorado, and Texas is listed with multiple locations for Texas showing manager locations at Grapevine, Texas. In May-June of 2019, SEMA Construction, Inc., was located in Grapevine, Texas at two established locations and also in Roanoke, and Denton, Texas.

### III. CAUSE OF ACTION

(3) Chad Marusak Pro Se, "former employee" or "Plaintiff", files this action by Pro Se and after expressing statements of his opposition to being discriminated against, demoted, and adding his participation after complaints of violations against his statutory protections. The former employee has suffered an additional qualifying injury and has been unemployed since July 1,2019. The Plaintiff alleges to have suffered months of demotions, endless harassment and to have suffered from the willful retaliation of the defendant since April-May of 2019 lasting up to July 2019.

(4) On March 06,2019 at or around 10AM, The plaintiff suffered a right knee injury later establishing him as disabled by whole body mass report of (4%) four percent and is thereafter again covered by the ADA and ADAAA and now qualifies for the coverage of the ADEA.

(5) Plaintiff "former employee" attends a program by approval of the Rehabilitation Act, and the (TWC)Texas Workforce Commission or" WIOA". Plaintiff did obtain a CLASS A CDL license from the offered MT Vocational School (See: Exhibits) course and after passing all requirements set forth by The State of Texas DPS/DOT licensing division by written exams.

(6) Plaintiff alleges that a certified medical examiner concluded in 2018 prior to employment with the defendant, that the former employee could/can operate heavy machinery (Semi Truck and Trailer combinations) after another issuance of a two (2) year medical certification that was provided to the defendant upon hiring in February 2019 and again upon promotion in March of 2019 after accepting the additional responsibilities requiring Hazmat.

(7) Plaintiff will demonstrate by" Exhibits" that ONLY approved DOT Medical examiners have concluded since 2012-2013, the former employee was capable

of maintaining within the trade he was licensed per examination and holding a Class A License with Medical Card as set forth and required by FMSCA, SEMA (See: Exhibits), and D.O.T.and D.P.S for the State of Texas. See: 49 CFR 391. See: Interrogatories responses

(8) Plaintiff is covered by Statutory Law of the ADEA, ADA and The ADAAA of 2008, and the Rehab Act Section 503 is applicable to SEMA Construction, Inc. See: Federal Contractors Section 503. Ref: Interrogatory responses.

(9) The defendant willfully demoted the plaintiff on more than one occasion regardless of qualification or licensing obtained or held by applicability to the promotion or original job offered. Defendant willfully issued additional volumes of work and paperwork unrelated to the position after report of opposition to cause problems for the former employee. Defendant by pretext constructs a requirement or workplan standard for the plaintiff as a single employee as the former employee will show by exhibits. Plaintiff will demonstrate by Exhibit and ESI after demotions his placement into jobs required no actual certification, licensing or special training and coincides with derogatory and negative remarks made via time stamped ESI. By the actions of the defendant, and to further harass the plaintiff after demotion the defendant requires the plaintiff to check in hourly or daily with assigned persons to dictate the responsibilities to the former employee as the former employee will show via ESI. Thereafter, this was used to separate and to further discriminate against the plaintiff to be later defined by the defendant and coworkers as having a "poor work standard." Exhibits (via text) show defendant inquiring of the plaintiff's ability to work solo and responsibly without error while addressing the injury to the right knee, while showing actual expectations of the defendant and certifying a violation of the EEOC policies referencing 100% Healed Policies and the rights of the plaintiff as alleged. Copy is attached to Amended Complaint.

(10) The Defendant did only speculate to the abilities of the former employee as shown by text, then to further retaliate and discriminate against the former employee while providing a false reason for demotions and terminations seen as wrongful termination. See: Exhibits as suffered on more than one occasion across many months becoming a prerequisite of the plaintiff for employment as the former employee was required to receive assignments or duties as shown via ESI which slandered and labeled the former employee.

(11) The Defendant did assign many coworkers to dictate the daily duties of the plaintiff after singling the plaintiff for retaliatory actions, remarks via text or phone call and required he states his actions to persons declared decision makers of the Defendant as shown via ESI. (See, Texts Exhibits)

(12) The Defendant assigned (stated to be an accommodation to the plaintiff) then allowed "Sedric" to remove without proper permission property (theft folder and cell phone) from the plaintiff by request of the defendant hiring

supervisor after being notified by the plaintiff of a discriminatory charge filing against the defendant who showed intent to halt, cease or interfere with any additional complaints in opposition from the plaintiff for discrimination, retaliation or other reasons seen applicable by statute by the former employee. The defendant now in May-June 2019 was located at Cowboy Lane shortly after relocating from the BNSF/John Day Road Location. The defendant then leases or purchases an Air-conditioned portable toilet (stated to be an additional accommodation to the plaintiff) and then defendant does reassign the former employee to labor in many areas across Texas and not at the location mentioned. After the defendant stated an accommodation was made by the former employee, the defendant reassigns the former employee exterior of the accommodation as not to be utilized by the ADA, ADEA covered worker. Plaintiff deems these acts as retaliatory, pretext and fraudulent and misrepresentation. (See: no statute found for this alleged act)

(13) Defendant harasses and discriminates against the former employee as established via ESI for age and disability while having knowledge. Asking the former employee" R U 100". ESI does establish the defendant's separate course of conduct in pretext after months of the plaintiff being singled out and treated differently than his coworkers. Causing slander to the work reputation and amongst his peers while being seen as favoritism resulting in defamation.

(14) The plaintiff was replaced by a demotion as shown by Exhibit with a younger male (See: Exhibits), then again, the former employee was demoted to running errands," running parts", and sweeping, cutting trees, cleaning out 50 ft, dry van, washing cars, and accused of theft on two separate occasions.

(15) Defendant accuses the former employee many times of damaging company equipment after suffering another disability in March 2019.Then the former employee reports the injury to the WC Division (TDI)after being ignored and brushed off by the defendant In April-May of 2019 regarding the denial of time off verbally as an accommodation to the plaintiff. (See: ESI)

(16) The Defendant did not allow time off for an accommodation as to arrange properly an accommodation that was beneficial to an older qualified person.

(17) The defendant shortly after demotion willingly and focused on the former employee in a way that was exterior of any job responsibility and focused on the short comings of a preexisting record of current injury or existing disability to include age (text sent to plaintiff) while committing to the act of retaliating against the former employee after demonstrating he was qualified for his position, and capable of laboring by himself unmonitored. The defendant does only inquire as a right expressed by a falsely stated reason for the provided accommodation. Adding: 29 U.S.C 631) (See: exhibits and remarks made to the former employee via text (ESI)) and copies of images from cell phone of the plaintiff or assignment after demotion.

(18) Plaintiff alleges these facts truthfully as ESI supports of the allegations made against the defendant except what property was stolen and not returned

whole. The material in support was gathered from March 06,2019 to April of 2019 to support the claims of 2019, and to support ALL future claims against the former employer or its applicable business partners after unlawfully conducting itself toward the plaintiff without just cause, and for

(a) wrongfully terminating with retaliating while committed to relieving the former employee of his employment for complaints made applicable to the worksite or his situation. Defendant employed the former employee to enter and labor on Federal funded work sites who was subjected to methods of constructive discharge or demotion. It was a requirement of all persons to establish and report safety concerns on the work sites.
(b) violating the rights and privacies of the former employee by discriminating against him with statements of age and disability by remark via ESI or verbal as shown to have been committed.
(c) the defendant intentionally failing by motive to repair or failing to address any safety issue or concern reported as required, and then only used these unrepaired properties or situations to be later utilized against the plaintiff for support of the claim made to further demote the plaintiff as pretext or retaliation. (Exhibits demonstrate the change of defendant toward the plaintiff at work after report of opposition.)
(d) accusing the former employee of theft on several occasions as of funds or property shown by exhibit only to discriminate against the former employee thereafter showing his prior opposition.
(e) making fraudulent claims regarding the accommodations provided to the former employee during employment that was not obtained or utilized by the former employee as stated by the defendant, and defendant stating to retrain the former employee without understanding his training was a prerequisite to the original position offered prior to termination.Thereafter,stating the plaintiff was terminated for" poor work standard."

## IV. CONCLUSION

(19) TITLE VII, as Amended,
(20) TITLE 1 and TITLE V OF THE ADA-Americans with Disabilities Act of 1990. Public Law 101-336. 108th Congress, 2nd session (July 26, 1990). To include: 42 U.S.C 12203(Pretext- See: ECF 40-1, (15). Pub. L. 101-336, title V, §503, July 26, 1990, 104 Stat. 370.

(21) REHAB ACT OF 1975 SECTION 501,503,505-FEDERAL CONTRACTORS (See: ECF 40-1, (16), Also "Prohibiting" Retaliation and Discrimination.

(22) REHAB ACT OF 1973, SECTION 503, Title 29 Chapter 16, Subchapter V at 793 (1), (2) adding: "(Including Construction)"

(23) ADEA OF 1967, 29 U.S.C. § 621 (**ADEA**; 29 U.S.C. § 621 to 29 U.S.C. § 634), Pub. L. 90–202., Title 29 Volume 4 Part 1625.2 To Include Discrimination on the grounds of Age and Disability by prior record with acts of retaliation while creating a negative or hostile work environment as shown within the many exhibits demonstrating pretext within a course of conduct. See: Exhibits as established in chronological order.

(24) *Huffman v. Brooklyn College, The City University of New York and Anne Lopes*, No. 20-CV-06156, 2022 WL 43766 (E.D.N.Y. Jan. 5, 2022)

(25 *The ADEA's prohibition of a hostile work environment is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Davis-Garett v. Urb. Outfitters, Inc., 921 F.3d 30, 41 (2d Cir. 2019). To establish a prima facie case of a hostile work environment, a plaintiff must show: (1) discriminatory harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and (2) a specific basis for imputing the objectionable conduct to the employer. Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). A plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered the conditions of [the plaintiff's] working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (Sotomayor, J.); Robins, 2010 WL 2507047, at \*11. To decide whether conduct has reached this threshold, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse. Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993) (finding that relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance"); see also Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002).   See: Chronological Plaintiff Exhibits*

(26) Retaliation:    Patterson v. McLean Credit Union,' lower courts consistently recognized employer liability under 42 U.S.C.19812 (§ 1981) for retaliation against employees. Section 1981 prohibited retaliation against employees for such actions as filing an Equal Employment Opportunity Commission (EEOC) charge, (3) complaining of harassment against an employer, (4) advocating the rights of racial minorities,(5) or filing a civil rights lawsuit.' Generally

speaking, § 1981 was available to employees who suffered from acts of retaliation at the hands of their employers.

(27) Comparative Analysis: § 1981 and Title VII Courts further supported their interpretation of § 1981 as including retaliation by comparing that statute with Title VII, 2 which expressly states that acts of retaliation by an employer are prohibited.3 In Benson v. Little Rock Hilton Inn,34 the Eighth Circuit determined that although § 1981 did not specifically prohibit an employer from retaliating against an employee for filing a claim against the employer, such retaliation claims could be brought under § 1981. Further, the court held such claims would be treated as if brought under Title VII. 5
See: Https://scholarship.law.marquette.edu/mulr/vol79/iss2/7/

(28) Pretext in Exhibits: "Plaintiffs can, for example, present evidence that the defendant's stated reasons for taking the adverse action were false; the defendant acted contrary to a written policy setting forth the action the defendant should have taken under the circumstances; or the defendant acted contrary to an unwritten policy or practice when making the decision. See Plotke v. White, 405 F.3d 1092, 1102 (10th Cir. 2005). A plaintiff may also show pretext through evidence that the "employer's proffered non-discriminatory reasons [were] either a post hoc fabrication or otherwise did not actually motivate the employment action ....""" Fuentes, 32 F.3d at

(29) *Dist. Xerox Litig.,* 850 F. Supp. 1079, 1084 (W.D.N.Y. 1994); *accord, Pitre v. Western Elec. Co.,* 843 F.2d 1262, 1268 (10th Cir. 1988); *Haskell v. Kaman Corp.,* 743 F.2d. 113, 119 (2d Ci. 1984). Conversely, in certain cases "a plaintiff's statistical evidence alone might constitute a prima facia case."

Adding: **Vance v. Ball State University, 133 S. Ct. 2434 (2013)**

(30) As alleged more fully above, defendant SEMA CONSTRUCTION, INC. discriminated against the plaintiff on the basis of his age, while informed of his disability during opposition and informing the defendant of his gathering information to participate by complaint from March 06,2019 to July 01, 2019.The Plaintiff has established via ESI to have suffered derogatory remarks, insults, reprimands and demotions, to have also suffered accusations so theft causing reputable harm, being subjected to two constructed wrongful terminations, As stated by the plaintiff to be surrounding or intermixed with the former employees medical disabilities and age group all while qualified as shown and further being capable of returning to labor as certified.

ULTIMATE EMPLOYMENT DECISIONS-FINISH

For example, in Nelson v. Upsala College, the Third Circuit stated that although "the connection with employment need not necessarily be direct, it does not further the purpose of Title VII to apply to conduct unrelated to an employment relationship."". The court further wrote that "cases dealing with unlawful retaliation under Title VII typically involve

circumstances in which the defendant's conduct has impaired or might impair the plaintiff in employment situations.""

The Age Discrimination Employment Act [hereinafter ADEA] anti-retaliation provision, 29 U.S.C. § 623(d) (1994), is almost identical to Title VII's anti-retaliation provision.

## V. RELIEF FOR DAMAGES

Plaintiff incorporates by reference 1 through 30 as if fully set forth herein. Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiff.

(a) Emotional stress and Anxiety adding additional problems,
(b) Loss of Consortium and personal privacy,
(c) Unnecessary loss of employment in 2019,
(d) Loss of future earnings and accrued debt to Plaintiff,
(e) Actual damages,
(f) Loss of quality of life,
(g) Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiff should be awarded reasonable fees for the preparation and trial costs accrued of this cause of action, and for its appeal, if required, or
(h) Prejudgment interest; and
(i) Post judgment interest
(j) Plaintiff seeks damages in an amount that is within the jurisdictional limits of the court, or as demanded of $300,000.00 dollars.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Plaintiff recover judgment from Defendant; actual damages, exemplary damages, pre-judgment interest at the legal rate; costs of preparation and filing with the court; and such other and further relief, both general and special, to which the Plaintiff is justly entitled.

_____   Jan. 24/22
CHAD MARUSAK PRO SE       DATE:

1/17/22, 2:58 AM                    Employer-Provided Leave and the Americans with Disabilities Act | U.S. Equal Employment Opportunity Commission

Case 4:21-cv-00475-P   Document 63   Filed 01/24/22   Page 10 of 13   PageID 612

for the additional leave, and why the initial estimate of a return date proved inaccurate. An employer may also request relevant information to assist in determining whether the requested extension will result in an undue hardship.

# Return to Work and Reasonable Accommodation (Including Reassignment)

Employees on leave for a disability may request reasonable accommodation in order to return to work. The request may be made by the employee, or it may be made in a doctor's note releasing the employee to return to work with certain restrictions.

## 100% Healed Policies

An employer will violate the ADA if it requires an employee with a disability to have no medical restrictions -- that is, be "100%" healed or recovered -- if the employee can perform her job with or without reasonable accommodation unless the employer can show providing the needed accommodations would cause an undue hardship.[7] Similarly, an employer will violate the ADA if it claims an employee with medical restrictions poses a safety risk but it cannot show that the individual is a "direct threat." Direct threat is the ADA standard for determining whether an employee's disability poses a "significant risk of substantial harm" to self or to others. If an employee's disability poses a direct threat, an employer must consider whether reasonable accommodation will eliminate or diminish the direct threat.

> **Example 13:** *A clerk has been out on medical leave for 16 weeks for surgery to address a disability. The employee's doctor releases him to return to work but with a 20-pound lifting restriction. The employer refuses to allow the employee to return to work with the lifting restriction, even though the employee's essential and marginal functions do not require lifting 20 pounds. The employer's action violates the ADA because the employee can perform his job and he does not pose a direct threat.*
>
> **Example 14:** *An employee with a disability requests and is granted two months of medical leave for her disability. Three days after returning to work she requests as*

CERTIFICATE OF SERVICE

I certify that, on the date set forth below, the foregoing SECOND AMENDED COMPLAINT was filed electronically VIA ECF to all parties of record as of January 24, 2022.

Respectfully Submitted,

_____  Jan 24, 22
CHAD MARUSAK PRO SE    DATE:

## CERTIFICATE OF CONFERENCE

I, Chad Marusak("Movant" or "Plaintiff") have conferred with the Defendant as required per FRCP 15 (A)(2) and Local Rules, and as Ordered per ECF:44 TO ECF:45, and a copy has been served on all parties listed on record on January 24, 2022 as required.

Respectfully Submitted,

_____     Jan 24, 22
CHAD MARUSAK PRO SE            DATE:

 **Chad Marusak <transportwithcm@gmail.com>**

## Motion for Leave

**Daniel McCabe** <dmccabe@canterburylaw.com>                    Mon, Jan 3, 2022 at 1:20 PM
To: Chad Marusak <transportwithcm@gmail.com>
Cc: Corinna Matlock <cmatlock@canterburylaw.com>, Austin Moorman <amoorman@canterburylaw.com>

Mr. Marusak,

It is our understanding that the Court ordered you to replead and, as such, my agreement to leave is not required. Regardless, Defendant is not opposed to you repleading per the Court's order. Defendant reserves its right to answer any new pleading and assert relevant defenses, without waiver.

Sincerely,
Daniel R. McCabe

[Quoted text hidden]