IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| CHAD MARUSAK<br>Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. 4:21-CV-475-P<br>(CONSOLIDATED WITH |
| SEMA CONSTRUCTION, INC.<br>Defendant. | §<br>§<br>§ | CIVIL ACTION NO. 4:21-CV-646-P) |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING DEFENDANT'S RULE 12 MOTION TO DISMISS

Pending before the Court is Defendant Sema Construction, Inc. ("Sema" or "Defendant")'s Rule 12 Motion to Dismiss and Answer to Plaintiff's Second Amended Complaint Subject Thereto ("Motion to Dismiss") [doc. 68], filed February 7, 2022. The Court, having carefully considered the motion, response, reply, and all relevant applicable law, recommends that Defendant's motion be **GRANTED** and that all claims against it be **DISMISSED**.

### I. BACKGROUND

The above-styled and referenced case has an intricate procedural history and is the product of the consolidation of two cases. Plaintiff Chad Marusak ("Marusak"), *pro se*, filed a complaint on March 31, 2021 [doc. 1] under Civil Action Number 4:21-CV-475-P. Marusak filed a parallel complaint on May 11, 2021 [doc. 1] under a different case number, Civil Action Number 4:21-CV-646-P. United States District Judge Mark Pittman referred 4:21-CV-475-P to United States Magistrate Judge Hal Ray via Special Order on March 31, 2021 [doc. 2]. Judge Pittman subsequently consolidated Action No. 4:21-CV-646-P into 4:21-CV-475-P, the above-styled and referenced case, on November 30, 2021 [doc. 36]. A January 4, 2022 electronic order assigned the undersigned Magistrate to the case.

1

On January 24, 2022, Plaintiff filed his Second Amended Complaint against Defendant [doc. 63]. In the Second Amended Complaint, the live pleading before the Court, Plaintiff alleges Defendant violated Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA") and its amendments, the Age Discrimination in Employment Act ("ADEA"), and Section 503 of the Rehabilitation Act. (Plaintiff's Second Amended Complaint ("Pl.'s Sec. Am. Compl.") at 2, 4, ¶ 8.) It is uncontested that Sema hired Marusak in February 2019 and that Marusak worked for the construction company through the end of June 2019. Marusak contends Sema hired him to "enter and labor on federal [sic] funded work sites," and, that on March 6, 2019, Plaintiff suffered a "right knee injury later establishing him as disabled by whole body mass report of (4%) four percent." *Id.* at 3, ¶ 13. After sustaining his injury, Marusak alleges he "suffered months of demotions, endless harassment" and "willful retaliation" at the hands of Sema from "April-May of 2019 lasting up to July 2019." *Id.*

In its Motion to Dismiss, Sema presents several bases for dismissal. First, Sema purports Plaintiff's Title VII claims should be dismissed because Marusak "failed to state a plausible claim for Title VII violations," by failing to allege discrimination on the basis of race, color, religion, sex, or national origin. (Defendant's Brief in Support ("Def.'s Br.") at 2.) Next, Sema asserts Marusak failed to state a retaliation claim under either Title VII or the ADA. (Def.'s Br. at 4.) Specifically, with respect to Title VII, Sema states Marusak did not allege that he "participated in an activity protected by Title VII or that there was a causal connection between the protected activity and any adverse employment activity." *Id.* Similarly, Sema states Marusak fails to meet the ADA's *prima facie* retaliation elements by failing to plead that he engaged in a protected

activity, that an adverse action occurred, and that there was a causal connection between the activity and the action. *Id.* at 4-5.[1]

Next, Sema claims Marusak's discrimination claims under the ADA and its amendments should be dismissed, asserting Marusak's complaint is void of factual assertions that establish him as a qualified individual with a statutorily protected disability. (Def.'s Br. at 5.) Moreover, Sema states dismissal is warranted because Marusak wholly failed to assert he was "discriminated against due to a knee injury, let alone that Defendant knew of [Marusak's] disability . . . or [that Sema] failed to provide a reasonable accommodation to him." *Id.* at 5. In its fourth basis for dismissal, Sema asserts Marusak failed to state a claim under Section 503 of the Rehabilitation Act. Sema argues, *inter alia*, that Marusak's claim under the Rehabilitation Act should be dismissed because Section 503 of the Rehabilitation Act does not provide a private cause of action. *Id.* at 6. Lastly, Sema asserts that Marusak has no viable claim under the ADEA, reasoning Marusak's claims under the ADEA should be dismissed because Marusak failed to establish age discrimination based upon disparate treatment or disparate impact theories. *Id.* at 8, citing *Gaines v. City of Dallas*, No. 3:18-CV-1867-L, 2018 WL 7078541, at *4 (N.D. Tex. Dec. 28, 2018).

## II. LEGAL STANDARD

Rule 12(b)(6) allows motions to dismiss for failure to state claims upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Courts are limited under 12(b)(6) to the four-corners of the texts; they may not look beyond the face of the pleadings. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). Additionally, the district court must accept all well-pleaded facts as true and view them in the light

---

[1] At the conclusion of its brief discussion on Plaintiff's retaliation claim under the ADA, Sema makes a blanket statement that Plaintiff's retaliation claims would "likewise fail" under the ADEA.

3

most favorable to the plaintiff.[2] *First City Bank*, 970 F.2d at 47. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of facts is improbable and that 'recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Conley v. Gibson*, 355 U.S. 41, 45 (1957) ("[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts."). Nonetheless, a plaintiff must provide the court in its pleadings with "more than labels and conclusions," as "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. When a pleading has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. ANALYSIS

#### A. Retaliation

First at issue is whether Plaintiff has stated legitimate Title VII[3] or ADA retaliation claims against Sema. A successful retaliation claim under Title VII and the ADA must satisfy the *McDonnell-Douglas* burden-shifting framework. *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973; *see, e.g., Yancy v. U.S. Airways, Inc.*, 469 F. App'x 339, 343 (5th Cir. 2012);

---

[2] Notably, it is well-established that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *see also Haines v. Kerner*, 404 U.S. 519, 596 (1972) ("[H]owever inartfully pleaded…we hold [pro-se plaintiffs] to less stringent standards than formal pleadings drafted by lawyers.").

[3] As Marusak merely plead violations under "Title VII as amended" without any further direction, the Court will address Title VII under the Civil Rights Act of 1964, as amended. At its crux, Title VII provides federal protections for all persons against employer discrimination based on an employee's race, color, national origin, sex or religion. *See* Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Moreover, under Title VII, an employer may not discriminate regarding any term, condition or privilege of employment. *Id.* Additionally, an employer is prohibited from retaliating against an employee because of the employee's opposition to "any practice made an unlawful practice" under Title VII, or the employee's participation in "an investigation, proceeding, or hearing under [Title VII]." *See* 42 U.S.C. § 2000e-3(a). Further, the Court notes that under Title VII the plaintiff, as a pre-requisite to filing suit, must exhaust administrative remedies and is required to notify the Equal Opportunity Employment Commission ("EEOC") about an alleged unlawful practice within 180 days of the alleged practice's occurrence. 29 C.F.R. sec. 1614.105. "It is settled that a federal court will not entertain employment discrimination claims brought under Title VII unless administrative remedies have first been exhausted." *Rodriguez v. United States*, 852 F.3d 67, 78 (1st. Cir. 2014). The only reference that this pre-requisite was satisfied is Marusak's statement that Sema was "notified by the plaintiff of a discriminatory charge filing against the defendant." (Pl.'s Sec. Am. Compl. at 5, ¶ 12.)

*Mohamad v. Dallas Cty. Comm. College Dist.*, No. 3:10-CV-1189-L, 2012 WL 4512488, at *5 (N.D. Tex. Sept. 28, 2012) (applying modified *McDonnell-Douglas* framework to retaliation claim).

*McDonnell-Douglas* developed three requisite prongs for retaliation claims. First, Plaintiff must establish a *prima-facie* case for retaliation. *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450 (5th Cir. 2013). Next, if a *prima-facie* case is established, the burden then shifts to the employer to produce a legitimate, non-discriminatory reason for the termination. *Id.*; *see also Cameron v. Idearc Media Corp.*, 685 F.3d 44, 48 (1st Cir. 2012). Lastly, if the employer successfully meets its burden, the plaintiff must then prove by a preponderance of the evidence that defendant's alleged nondiscriminatory reason was a pretext for discrimination.[4] *Id.*; *see also LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 1996).

Under the first *McDonnell-Douglas* prong, establishing a prima facie case of retaliation, a plaintiff must demonstrate that "(1) he engaged in a protected activity,[5] (2) an adverse employment action occurred,[6] and (3) a causal link existed between the protected activity and the adverse employment action."[7] *Walker v. Norris Cylinder Co.*, No. 3:03-CV-1009-D, 2005 WL 2278080,

---

[4] "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) (quoting *Tex Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981)).

[5] "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotation marks omitted); *see* 42 U.S.C. § 2000e-3(a). In other words, Plaintiff "must establish that she would not have been terminated but for her" engaging in the protected activity. *Turner v. Jackson State Univ.*, 630 F. App'x 229, 232 (5th Cir. 2015).

[6] In the retaliation context, an "adverse employment decision" is an action that a reasonable employee would have found to be "materially adverse." *Cooper v. Wal-Mart Transp., LLC*, 662 F. Supp. 2d 757, 777 (S.D. Tex. 2009).

[7] The causal link for a *prima-facie* case may be established if evidence shows that the employer's decision to terminate was based in part on knowledge of the employee's protected activity or if there is close timing between an employee's protected activity and an adverse action against her. *Cooper*, 662 F. Supp. 2d at 777. The Court notes that courts have taken differing positions on how the United States Supreme Court's decision in *University of Texas*

at *9 (N.D. Tex. Sept.19, 2005) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir.1996)). *See Cephus v. Texas Health and Human Servs. Comm'n*, 146 F. Supp. 3d 818, 830 (S.D. Tex. 2015).

In the instant case, Marusak references that he "pass[ed] all requirements set forth by [t]he State of Texas DPS/DOT licensing division by written exams," and was able to "operate heavy machinery (Semi Truck and Trailer combinations)" as a Sema employee. (Pl.'s Sec. Am. Compl. at 3, ¶¶ 5, 6.) Marusak seems to assert that Sema retaliated against him by terminating his employment after he made "complaints applicable to the worksite or his situation"[8] to his Sema supervisors. *Id.* at 5, ¶12.

Marusak states he was "willfully demoted" on "more than one occasion regardless of qualification or licensing obtained or held by applicability to the promotion or original job offered." (Pl.'s Sec. Am. Compl. at 4, ¶ 9.) He further states Sema "willfully issued additional volumes of work and paperwork unrelated to the position after report of opposition to cause problems for [him]" and that Sema sought to "further harass [him] after demotion" by having Marusak "check in hourly or daily with assigned persons to dictate the responsibilities [of his

---

*Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013), affects the *prima-facie* causation analysis as well as the final step pretext causation analysis in Title VII retaliation cases. *See Foster v. Univ. of Maryland*, 787 F.3d 243 (4th Cir. 2015) (discussing cases). Some courts in the Fifth Circuit require evidence of "but-for causation" to establish a *prima-facie* case. *See Shu-Hui Wu v. Miss. State Univ.*, 626 F. App'x 535, 537 (5th Cir. 2015) (citing to *Nassar* in explaining the causal connection step of the *prima-facie* case of retaliation), *Finnie v. Lee Cty. Miss.*, 541 F. App'x 368, 371-72 ("To meet the third prong [of a *prima-facie* case of retaliation], *Nassar* requires that [Plaintiff] provide sufficient evidence to allow a reasonable juror to conclude that her filing of an EEOC claim was the 'but-for' cause of her termination, that, had she not filed the claim, she would have remained in her position . . . ."). Other courts have held, either expressly or implicitly, that *Nassar* did not alter the elements of a *prima-facie* case. *See Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 336 (5th Cir. 2014); *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). The Court, however, is not overly concerned with this legal issue because regardless of how stringently or deferentially the Court considers causation at the third step of Plaintiff's *prima-facie* case, the Court is persuaded Marusak's pleadings do not reach this final step. *See* discussion, *infra*.

[8] The nature of the "discriminatory charge filing" seemingly refers to the requisite pre-suit administrative remedy as discussed, *infra*.

employment]." *Id.* Marusak maintains that "shortly after [his] demotion [Sema] willfully and [sic] focused on [him] in a way that was exterior of any job responsibility and focused on the short comings [sic] of [Marusak's] current injury." *Id.* at ¶ 17. Specifically, Marusak references an "air-conditioned portable toilet" Sema provided its employees on its worksite. Marusak maintains the toilet was guised as an "additional accommodation" to him, but that he "deems [the toilet] as retaliatory." *Id.* Marusak also discusses an unclear situation where he asserts an individual identified only as "Sedric" was directed by Sema to take his property as an act of retaliation by Sema for Marusak's filing a discrimination claim against Sema. *Id.* at 4, ¶ 12.

The Court concludes, after reviewing the pleadings, that Marusak has failed to establish a *prima-facie* case of retaliation under both Title VII and the ADA. Even assuming that Marusak engaged in a protected activity (filing the workplace complaint) and was subject to an adverse employment action, Marusak has failed to plead facts that could establish a causal connection between his alleged protected activity and the alleged adverse employment action. Marusak is missing a critical component in this allegation – he fails to plead that Sema, specifically his supervisors that are, presumably, responsible for his promotions and demotions, had any knowledge of his "discriminatory filing" or that they demoted him *because* of his filing. (Pl.'s Sec. Am. Compl. at 5, ¶ 12.) As Marusak's complaint fails to survive past *McDonnell-Douglas*' first prong and establish a *prima-facie* case of retaliation, the burden does not shift to Sema and, thus, the Court will not address the remaining prongs.

Based on the foregoing, the Court finds that Marusak's claims of retaliation under both Title VII and the ADA should be dismissed and Sema's motion to dismiss on the issue of retaliation should be **GRANTED**.

## B. Disability Discrimination

The next issue is whether Sema discriminated against Marusak because of his physical disability. The ADA prohibits discrimination in employment against qualified persons with a disability. *See generally* 42 U.S.C. § 12112(a). A Plaintiff can establish a claim of discrimination under the ADA through either direct or circumstantial evidence. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). Because Marusak pleads no *direct* facts evidencing disability discrimination, the Court must analyze his claim under the modified *McDonnell-Douglas* burden-shifting approach. To establish a *prima-facie* case of disability discrimination, a plaintiff must show that he "(1) suffers from a disability;[9] (2) was qualified for the job; and (3) was subject to an adverse employment action because of his disability. *See Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010); *Dupre v. Charter Behav. Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 613 (5th Cir. 2001); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir.1999); *Mackey v. Children's Med. Ctr. of Dallas*, No. 3:05-CV-043-L, 2006 WL 2713788, at *17 (N.D. Tex. Sept. 22, 2006).

The defendant employer then "must show a legitimate, nondiscriminatory reason for its action." *Seaman*, 179 F.3d at 300. If the defendant meets its burden, which is one of production only, then plaintiff may proceed under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid v. Jack in the Box*, 376 F.3d 305, 312 (5th Cir. 2004); *Siddiqui v. Autozone West, Inc., et al.*, 731 F. Supp. 2d, 639, 651 (N.D. Tex. July 16, 2010); *Cheatham v. Farmer Ins. Grp.*, No. 4:11-CV-638-Y, 2013 WL 961494, at *3 n.2 (N.D. Tex. Mar. 13, 2013); *Evans v. Tex. Dept. of Transp.*, 547 F. Supp. 2d 626, 640 (E.D. Tex. 2007). Discrimination under the ADA also includes "not making reasonable accommodations to the known physical or mental

---

[9] "Merely having an impairment . . . does not make one disabled for purposes of the ADA. Plaintiffs also need to demonstrate that the impairment substantially limits a major life activity." *E.E.O.C. v. Chevron Phillips Chemical Co.*, LP, 570 F.3d 606, 614 (5th Cir. 2009); *see e.g. Toyota Motor Mfg., Ky., Inc. v. Williams*, 543 U.S. 184, 195 (2002) (citing 32 U.S.C. Sec. 12102(2)(A)(1994)).

limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[10] 42 U.S.C. § 12112(b)(5)(A).

Here, Marusak claims he suffers from a disability originating from a knee injury. *See* discussion, *supra*. Though brief and murky, Marusak also provides vague information by way of references to state licensures and certifications that suggest he was qualified for his employment at Sema. (Pl.'s Sec. Am. Compl. at 3, ¶¶ 5, 6.) Marusak maintains he was "willfully demoted . . . on more than one occasion regardless of qualification or licensing obtained or held by applicability to the promotion or original job offered." (Pl. Sec. Am. Compl. at 4, ¶ 9.) Further, Marusak claims that "this [demotion] was used to separate and to further discriminate against [him]." *Id.* Marusak suggests that his "poor work standard" was a guise used by Sema and his co-workers to justify his demotion. *Id.*

The Court will accept Marusak's statements regarding his disability and work qualifications, though unclear at best, as factual, though he wholly fails to adequately plead the ADEA's third *prima-facie* prong that requires he set forth an adverse employment action occurred *because* of his disability. As stated forth above, regarding his status as disabled, Marusak states, "On March 06,2019 [sic] . . . Plaintiff suffered a right knee injury later establishing him as disabled by whole body mass report of (4%) four percent [sic]. . . ." (Pl.'s Sec. Am. Compl. at 3, ¶ 4.)

---

[10] In general, the ADA sets forth that an employer has an obligation to provide a "reasonable accommodation," when "triggered," including changes to an employer's facilities and procedures to aid the disabled employee perform essential functions of his job. *See Cortez v. Raytheon Co.*, 663 F. Supp. 2d 514 (N.D. Tex. Oct. 1, 2009) (citing 42 U.S.C.A. Sec. 12112(b)(5)(A)). The Court notes to establish a *prima-facie* case of discrimination based on failure to accommodate, the Plaintiff must show: (1) Defendant was covered by the statute; (2) Plaintiff was disabled; (3) Plaintiff could perform the essential functions of her job with or without reasonable accommodations; and (4) Defendant had notice of her disability and failed to provide accommodation. *See Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 318 (5th Cir. 2013). While Marusak mentions accommodations throughout his complaint, he fails to specifically plead a claim for failure to accommodate under the ADA. Consequently, Sema's motion to dismiss does not address the issue of failure to accommodate and neither does this Court.

Interestingly, Marusak seems to suggest that he was still able to perform his essential job functions as normal despite this disability, specifically that he held or was capable of holding licenses with the "D.O.T. and D.P.S. for the State of Texas." (Pl.'s Sec. Am. Compl. at 4, ¶ 7.) According to Marusak, "[a] certified medical examiner concluded [prior to Marusak's injury] that [Marusak] could/can operate heavy machinery. . . ." *Id.* at 3, ¶ 6. Further, Marusak claims he received "another issuance of a two (2) year medical certification that was provided to [Sema] upon [Marusak's] hiring in 2019 and again upon promotion in March of 2019 after accepting the additional responsibilities requiring Hazmat." *Id.* Marusak frequently references his alleged "demotions" and "terminations." *Id.* at 4, ¶ 11. It is clear that he believes Sema's actions amounted to his "wrongful termination," though he wholly fails to plead facts that could equate Sema's "singling [him] out," "remarks," or "dictat[ion] of [his duties]" with his knee disability.

Based on the foregoing, like his retaliation claims under Title VII and the ADA, the Court finds Marusak also fails to establish a *prima-facie* case of disability discrimination and that Defendant's Motion to dismiss on this issue should be **GRANTED**.

### C. Rehabilitation Act Section 503

Next at issue is whether Marusak has properly plead that Sema's actions towards him violated section 503 of the Rehabilitation Act. Simply stated, section 503 of the Rehabilitation Act prohibits federal contractors from discriminating against employees with disabilities. *See generally* 29 U.S.C. § 793.

> "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [his] disability, be excluded from the participation in, be denied the benefits of, or be subjected to any discrimination under any program or activity *receiving Federal financial assistance* . . ."

29 U.S.C. § 794 (emphasis added).

Marusak's blanket statement that Sema employed him "while under contract for federal work sites" is insufficient to satisfy the statutory requirement that would solidify Sema as an organization that receives federal financial assistance. (Def.'s Sec. Am. Compl. at 3, ¶ 2.) Consequently, the Court finds that Plaintiff has failed to state a claim under section 503 of the Rehabilitation Act and that Defendant's Motion to Dismiss based on this issue should be **GRANTED**.

### D. Age Discrimination

The final issue is whether Marusak suffered discrimination based on his age and in violation of the ADEA.[11] Again, the Court uses a modified *McDonnell-Douglas* burden-shifting framework to determine age discrimination under the ADEA. Age Discrimination in Employment Act of 1967 § 4(a)(1, 2), 29 U.S.C. § 623 (a)(1, 2). Specific to age discrimination, the modified *McDonnell-Douglas* framework utilizes two types of discrimination claims: (1) disparate treatment claims and (2) disparate impact claims. *See id.; see also Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000); *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 240 (2005). "Disparate treatment refers to deliberate discrimination in the terms or conditions of employment" while "disparate impact claims do not require the intent to discriminate." *Powell v. Dallas Morning News L.P.*, 776 F. Supp. 2d 240, 257 (N.D. Tex. March 28, 2011) (citing *Munoz*, 200 F.3d 299); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).

Under the ADEA, disparate treatment occurs when an employer treats a person less favorably than others because of his age. 14A C.J.S. Proof of ADEA claim; disparate treatment and disparate impact § 265 (2022). A plaintiff must establish the following four elements to make

---

[11] The Court notes that, just as required as a pre-requisite for bring a claim under both Title VII and the ADA, discussed, *infra*, a plaintiff must exhaust administrative remedies by notifying the EEOC about an alleged unlawful practice within 180 days of its occurrence and before bringing suit under the ADEA. 29 U.S.C.A § 633a.

11

a *prima-facie* case of age discrimination based on disparate treatment: (1) that he is of an age within the protected age group,[12] (2) that he is qualified for employment, (3) that plaintiff suffered an adverse employment action, and (4) that he was replaced by someone younger or treated less favorably than a similarly situated younger employee. *Smith*, 351 F.3d at 196; *see also Gaines*, 2018 WL 7078541, at *4. If a *prima-facie* case is established, Courts then examine an employer's motives in making the decision that caused disparate treatment. Plaintiff's age must have been a determinative factor in the employer's decision-making process and it must have had a determinative influence on the outcome of the decision. *See, e.g., Reeves.*, 530 U.S. 133.

In contrast, ADEA claims that rely on a disparate impact theory must identify "the specific employment *practices* that are allegedly responsible for any observed statistical disparities [in age]" rather than merely pointing to a generalized policy that eventually leads discrimination amongst those in a protected age group. *Wards Cove Packing Co., Inc. v. Atonio*, 590 U.S. 642, 565 (1989) (emphasis added) (quoting *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977 (1988)); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 100 (2008).

> "To establish a *prima-facie* case of age discrimination under a disparate impact theory, the plaintiff need not show that the employer was motivated by a discriminatory intent. Rather, the disparate impact theory requires proof that a facially neutral practice has a significant discriminatory impact on older employees."

14A C.J.S. Proof of ADEA claim; disparate treatment and disparate impact § 265 (2022).

In this case, Marusak's age discrimination claims appear to be supported soley by the disparate treatment pillar. He wholly fails to mention any specific employment practices or generalized policy that led to discrimination amongst Sema employees, which might support a claim under the disparate impact theory. For these reasons, the Court will only examine Marusak's

---

[12] The ADEA protects plaintiffs aged 40 and older. 29 U.S.C.A. § 631(a).

age discrimination claim under the disparate-treatment prong of the ADEA's modified *McDonnell-Douglas* framework.

In attempting to satisfy *McDonnell-Douglas*' first prong, Marusak makes a broad claim he was discriminated against "on the basis of his age." (Pl.'s Sec. Am. Compl at 8, ¶ 30.) He references others in his "age group" and references himself as a "qualified older person" but fails to provide his actual age. *Id.* (*See* Pl.'s Sec. Am. Compl. at 5, ¶ 16.) Regarding the second prong, Marusak's qualifications for employment, he states that he has been "employed since 2013 within a trade which does require a specific list of requirements be met" but fails to list whatever qualifications Sema requires of him for his employment. (Plaintiff's Response to Defendant's Motion to Dismiss ("Pl.'s Resp.") at 1.) Marusak does mention, however, that he has obtained the requisite licenses from various state agencies that allow him to perform his job. (Pl.'s Sec. Am. Compl. at 3, ¶¶ 5, 6.)

Next, Marusak makes several references to adverse employment actions, stating he was "replaced by a demotion . . . by a younger male." *Id.* at ¶14. "Defendant harasse[d] and discriminated against [him] . . . for age and disability while having knowledge [of his age and disability]." (Pl.'s Sec. Am. Compl. at 5, ¶ 13.) Specifically, he references an instance where he was asked, "R U 100," though neither the context nor the identity of the inquisitor is alleged. Even assuming Marusak does qualify as an individual within the protected age class and is qualified to perform the tasks of his employment, Marusak fails to adequately plead a *prima-facie* case of age discrimination on the theory of disparate treatment. The Court finds that Marusak has wholly failed to plead that he suffered an adverse employment action on the basis of his age or that he was replaced by a similarly qualified younger individual.

In summation, Marusak has failed to properly plead a case for age discrimination under the ADEA and Defendant's Motion to Dismiss on this issue should be **GRANTED**.

## IV. CONCLUSION

For the reasons set forth above, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [doc. 68] be **GRANTED** and the above-styled and numbered cause be **DISMISSED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **April 5, 2022** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED March 22, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE